UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> BARRY J. CADDEN, *et al.*, <br><br>       Defendants. | CRIMINAL NO. 14-CR-10363-RGS |

**GREGORY CONIGLIARO'S MOTION FOR JUDGMENT OF ACQUITTAL
PURSUANT TO RULE 29(a)**

While it is only in rare circumstances that courts grant Motions for Judgments of

Acquittals after the government's opening statement, the current posture of this case cries out for

exactly that. Unequivocal statements made by high ranking FDA employees, through both

congressional testimony and internal FDA documents, are now stipulated evidence. The

admission of those statements eviscerate the reasons this court previously cited in denying

Mr. Conigliaro's Renewed Motion to Dismiss (Docket #1013 and #1014). As more fully set forth

below, this court should exercise its discretion and halt the gears from continuing to grind

forward with all the wear and tear on Mr. Conigliaro, the court, and citizen jurors.

Specifically, in denying Mr. Conigliaro's Renewed Motion to Dismiss, this court

previously held that "[o]ne of the most sacrosanct totems is the rule that, with the rarest of

exceptions, a court may not usurp the function of the jury by pretermitting a trial based on facts

that are not undisputed, stipulated to, capable of judicial notice, or that fall within an exception to

the rules of evidence, most notably an exception to the rule against hearsay."[1]

The court also noted that "[t]he evidence that is critical here — the testimony of Commissioner Hamburg, Dr. Woodcock, and other FDA officials, as well as the internal corroborating documents — is within the protected territory of disputed fact and fits under no recognized evidentiary exception that the court can identify, nor is it susceptible to judicial notice." October 10, 2017 Order, p. 8.

The court further noted that in *Cadden*, the "government's *prima facie* case" was answered by the introduction of the following evidence:

- The testimony of Dr. Margaret Hamburg in hearings before Congress that followed the outbreak, when Commissioner Hamburg "testified that the FDA had been unable to draw any 'bright line' demarcating compounding pharmacies and drug manufacturers given 'an evolving industry overlaid on top of a fragmented and ambiguous legal framework.' As a result, 'our [the FDA's] authority over compounding is limited, unclear, and fragmented.'" *Id*. at pp. 4-5 (brackets in original).

- The fact that "Dr. Hamburg pointed out that overregulation of the compounding industry was not necessarily desirable: 'These outsourcers produce high volumes of high risk drugs, often for hospitals that rely on them to meet critical product needs for their patients. . . . Applying [the regulatory tools we have] in full force could lead to significant dislocations in the healthcare system, and likely shortages.'" *Id* at p. 5.

- An "October 14, 2011 internal memorandum prepared by senior FDA officials reminding their superiors that, while the FDA had the statutory authority to do so, the FDA 'has chosen not to draw the line between manufacturing and traditional compounding with formal regulations.' These officials acknowledged that the result was 'a difficult regulatory environment which has led to uncertainty in enforcement and has provided no clear guidance to industry.'" *Id*. at p. 5 (brackets in original).

---

[1] Memorandum and Order on Defendants' Motions to Dismiss Count 3 of the Indictment (Docket #1232) ("October 10, 2017 Order"), p. 7 (emphasis supplied) (citing *Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 566 (1931) (noting that where a "conclusion rested upon inferences from facts within the exclusive province of the jury," such a conclusion may "not be drawn by the court . . . without usurping the functions of that fact-finding body") and citing U*nited States v. Espinal-Almeida*, 699 F.3d 588, 610 (1st Cir. 2012) (noting the exception that a court "may however take judicial notice of the foundational facts if the evidence resulted from 'a process or system that is generally known and accepted as accurate.'") and also citing 31 Wright & Gold, *Federal Practice and Procedure § 7114 (2012)).

- "[S]imilar Congressional testimony by Dr. Janet Woodcock, the Director of the Center for Drug Evaluation and Research at the FDA, given contemporaneously with that of Dr. Hamburg. Dr. Woodcock testified that there is no clear test for differentiating compounding pharmacies from drug manufactures, particularly as hospitals have been turning to compounding pharmacies as a substitute for an in-house pharmacy. She also acknowledged that much of what NECC was doing in making large batches of anticipatory drugs and shipping them to diverse locations without a prescription was a common practice in the industry, and one that the FDA had no clear authority or jurisdiction to regulate."

However, between the time this court issued that ruling and today, those same critical facts have become evidence in this trial, admitted through the court's acceptance of the Pretrial Evidentiary Stipulation between defendants, the United States of America, and the FDA. *See* Stipulation, (Docket #1570, attached hereto as **Exhibit A**). Based upon the stipulated evidence, no matter what evidence the government intends to introduce at trial, it cannot and will not overcome the legal doctrine of pure legal impossibility.

Thus, for all of the reasons contained in Mr. Conigliaro's previously filed Renewed Motion to Dismiss Count III and Memorandum in Support (Docket #1013 and #1014) attached hereto as **Exhibit B**), due to the doctrine of Legal Impossibility, it is no longer appropriate for the "the gears [to] grind forward with all the wear and tear on defendants, the court, and citizen jurors[.]" October 10, 2017 Order, p. 7. Accordingly, this court should dismiss Count III, thereby ending the "hapless undertaking" another trial on the same Count entails. *See id.*

### THIS COURT HAS THE AUTHORITY TO GRANT DEFENDANT'S MOTION FOR ACQUITTAL AFTER THE GOVERNMENT'S OPENING

A Rule 29(a) motion may be adjudged prior to the close of the Government's presentation of evidence "if at an earlier stage basic facts appear (or do not appear) inescapably leading to the conclusion that, irrespective of whatever other evidence may be introduced, the prosecution must fail." *United States v. UBL*, 472 F. Supp. 1236, 1237 (1979) (quoting *United*

*States v. Maryland Cooperative Milk Producers, Inc.,* 145 F. Supp. 151 (D.D.C. 1956) and citing

*United States v. Capocci,* 433 F.2d 155 (1st Cir. 1970)).

"To continue the trial after it is apparent that the prosecution cannot introduce sufficient

evidence to support a guilty verdict would be a waste of everyone's time and extremely unfair to

the defendant. It would simply be a travesty of justice." *Id.*

"The decision to grant a motion for acquittal after a prosecutor's opening statement is

discretionary and should be made only where the statement contains a clearly admitted fact that

must defeat its case." *U.S. V. Graham*, 146 F.3d 6, 10 (1st Cir. 1998) (citing *U.S. v. Ingraldi,*

793 F.2d 408, 414 (1st Cir. 1986) and *U.S. v. Capocci*, 433 F.2d 155, 158 (1st Cir. 1970)).

The First Circuit's decision in *Ingraldi* is instructive as to this court's clear authority to

grant a Motion for Judgment of Acquittal after the Government's opening statement:

> [t]his court has held that the motion can be brought after the government's
> opening statement in certain limited circumstances. This extension of the rule
> began with this court's decision in *In Re United States*, 286 F.2d 556 (1st Cir.
> 1961), rev'd sub nom. *Fong Foo v. United States*, 369 U.S. 141, 82 S.Ct. 671,
> 7 L.Ed.2d 629 (1962). The issue in that case was whether the trial judge could
> enter a judgment of acquittal during the presentation of the government's case
> long before the government had an opportunity to show whether it had a case.
> We held that the district judge "had no power, that is to say, jurisdiction" to enter
> a judgment of acquittal. We issued a mandamus requiring the judge to vacate his
> erroneous suspension order, *Id*. at 563, and held that since the trial judge was
> without jurisdiction to enter the judgment of acquittal, double jeopardy would not
> attach. *Id*. at 565. We left open the question whether ["]judgment of acquittal
> might properly be entered in some situations even before the close of the
> Government's case, as, for instance, when the Government's opening statement
> unmistakably shows that the evidence it proposes to introduce would not sustain a
> conviction, or when it produces evidence conclusively showing either that it has
> no case or that the accused has an iron-clad defense.["] *Id*. at 562.

> The Supreme Court reversed on the ground that the verdict of acquittal was final
> and could not be reviewed without violating defendant's constitutional right
> against double jeopardy. 369 U.S. at 143, 82 S.Ct. at 672. The question left open
> in *In Re United States*, whether the trial court could enter a judgment of acquittal
> after the government's opening in certain circumstances, was not addressed by the
> Supreme Court.

749278v1/6847-001

It was answered for this circuit in *United States v. Capocci*, 433 F.2d 155, 158
(1st Cir.1970). We there held that in certain circumstances a judgment of acquittal
could be entered after the government's opening, citing *United States v. Dietrich*,
126 F. 676 (C.C.D. Neb. 1904). Dietrich held that a judgment of acquittal could
be entered after the government's opening where a fact is clearly and deliberately
admitted in the government's opening which must defeat the prosecution in the
end. 126 F. at 677-78. We emphasized in *Capocci* that the granting of such a
motion is "purely discretionary." 433 F.2d at 158. *Capocci* has since been
followed in *United States v. Oliver*, 570 F.2d 397, 400 (1st Cir.1978), in which we
held that the judgment of acquittal was purely discretionary, and that a judgment
of acquittal should be granted after the government's opening only when the
statement clearly and affirmatively shows that the charge against the defendant
cannot be sustained under any view of the evidence consistent with the statement.

793 F.2d at 413-414.

## **CONCLUSION**

For the foregoing reasons and the court's reasoning in the October 10, 2017 Order, the

court should exercise its discretion and dismiss Count Three, based on the application of the

doctrine of pure legal impossibility. The testimony of Commissioner Hamburg, Dr. Woodcock

and the internal FDA documents indisputably establish that there was no clear law defining the

difference between a compounding pharmacy and a manufacturer. Accordingly, it was legally

impossible for Mr. Conigliaro to have violated any law by seeking to have NECC be perceived

as a compounding pharmacy. A judgment of acquittal should be granted because the undisputed

evidence clearly and affirmatively shows that the Count III charges against Mr. Conigliaro

cannot be sustained under any view of the evidence.

*[signature page to follow]*

Respectfully submitted,

GREGORY A. CONIGLIARO,

By his attorneys,


/s/ Daniel M. Rabinovitz
Daniel M. Rabinovitz, Esq. (BBO #558419)
Shawn Lu, Esq. (BBO #679755)
MURPHY & KING, P.C.
One Beacon Street, 21st Fl.
Boston, Massachusetts 02108
(617) 423-0400 – phone
(617) 423-0498 – fax
drabinovitz@murphyking.com
Dated: October 15, 2018        slu@muprhyking.com

749278v1/6847-001

## <u>CERTIFICATE OF SERVICE</u>

I, Daniel M. Rabinovitz, hereby certify that on October 15, 2018, I caused a copy of the

foregoing to be served upon counsel for the government and other parties through the ECF

system.

/s/ Daniel M. Rabinovitz
Daniel M. Rabinovitz

749278v1/6847-001