UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,

v.

GREGORY CONIGLIARO *et al.*,

Defendants.

CRIMINAL NO. 14-CR-10363-RGS

# GREGORY CONIGLIARO'S SENTENCING MEMORANDUM

## I. INTRODUCTION

Gregory Conigliaro ("Mr. Conigliaro") was convicted of a single count of what is commonly known as the "Defraud Clause" of 18 U.S.C. § 371, also known as a *Klein* Conspiracy. Mr. Conigliaro recognizes that pursuant to the advisory Federal Sentencing Guidelines the offense level corresponding to his conviction is level 15 (the "Base Level"). However, as the Court considers the proper sentence that is "sufficient, but not greater than necessary," to meet the goals set forth in 18 U.S.C. § 3553(a), Mr. Conigliaro urges the court to recognize several compelling factors that support the court exercising its discretion and varying, or departing in a downward fashion from Mr. Conigliaro's Base Level.

After considering those factors, and viewing Mr. Conigliaro's offense conduct in an accurate, balanced manner (as opposed to the distorted version submitted by the government), Mr. Conigliaro requests that the Court impose a non-incarceration sentence, without a home confinement component, and an appropriate financial penalty ("Defendant's Requested Sentence").

The factors that warrant a downward departure, and/or a variance include Mr. Conigliaro's exceptional military service, his lack of any other criminal behavior, and his daily care for his 89 year old father (who is legally blind). Defendant's Requested Sentence will also permit Mr. Conigliaro, who is 57 years old, to continue to work and provide for his family as well as continuing to provide employment for the approximately 25 employees Mr. Conigliaro's companies employs. This will allow those employees to continue to provide for their families---something that would undoubtedly cease if Mr. Conigliaro was incarcerated.

The Court should also consider that Mr. Conigliaro has been subject to pre-trial and post-trial probation for approximately 5.7 years and has dutifully complied with all of the requirements and conditions of that probation.[1]

As the discussion below will demonstrate, this is a case in which a "mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the U.S. Sentencing Commission in formulating the Guidelines that should result in a sentence different from that described." See 18 U.S.C. §3553(b)(l). Mr. Conigliaro submits that when the Court considers all of the relevant circumstances of this case, it is clear that the facts of this case are not suited to a mechanical application of the U.S. Sentencing Guidelines and that the Court instead should exercise its broad discretion to impose a sentence outside of the advisory guidelines.

[1] Mr. Conigliaro was on pre-trial probation from the day of arrest on 12/17/14, until this Court's Judgment of Acquittal entered on 6/17/19, which equates to 4.5 years. Additionally, Mr. Conigliaro was subject to oversight from the probation department from the time the First Circuit reinstated his conviction on 9/27/21, through the date of sentencing on 12/1/22, which equates to an additional 1.2 years, for a total of 5.7 years.

## II. GENERAL SENTENCING FRAMEWORK

Since the Supreme Court decisions in *United States v. Booker*, 543 U.S. 220 (2005), *Gall v. United States*, 552 U.S. 38 (2007), and *Kimbrough v. United States*, 552 U.S. 85 (2007), sentencing options available to district courts have significantly broadened. *See, e.g., United States v. Taylor*, 532 F.3d 68, 69 (1st Cir. 2008). "[O]nce the [guideline sentencing range ("GSR")] is properly calculated, 'sentencing becomes a judgment call' for the court, and the court may construct a sentence varying from the GSR 'based on a complex of factors whose interplay and precise weight cannot even be precisely described.'" *United States v. Innarelli*, 524 F.3d 286, 292 (1st Cir. 2008) (quoting *United States v. Martin*, 520 F.3d 87, 92 (1st Cir. 2008)). Sentencing courts must follow "a case-by-case approach, the hallmark of which is flexibility. In the last analyses a sentencing court should not consider itself contained by the guidelines to the extent there are sound, case-specific reasons from deviating from them." Id. at 91. The post-*Gall* sentencing inquiry is "broad, open-ended, and significantly discretionary." *Id.* at 92.

## III. MR. CONIGLIARO'S BACKGROUND

### A. Personal Information

Gregory Conigliaro was born in 1965 in Lynn, Massachusetts. He and his siblings were raised by their parents in Swampscott, Massachusetts until Mr. Conigliaro was 13 years old, after which time the family briefly relocated to Glastonbury, Connecticut. Approximately one year later his family moved to Sherborn, Massachusetts. Mr. Conigliaro graduated from Dover-Sherborn Regional High School in Dover, Massachusetts. Following high school, he attended Tufts University on a four-year Air Force ROTC scholarship and graduated with a Bachelor of Science in Civil Engineering and as a commissioned Second Lieutenant in the United States Air

Force. For the last 35 years he has resided in various Metro west communities, including the last 12 years in Southborough, Massachusetts.

For twenty-three years, Mr. Conigliaro has been married to his wife, Cynthia Conigliaro. Together they raise their 17 year old daughter and their 14 year old son. Mr. Conigliaro maintains a loving and close relationship with his wife, children, siblings and elderly parents.

B. Employment History

For his entire adult life, Mr. Conigliaro has worked extremely hard, as a productive member of society, providing for his family financially and emotionally.

From 1990 through the present, Mr. Conigliaro has been the President and owner of Conigliaro Industries, Inc., an industrial recycling company based at 701 Waverly Street in Framingham Massachusetts. This facility serves as a location for private businesses to drop off over 150 different recyclable materials. Between 1994 and 2010, Mr. Conigliaro and Conigliaro Industries received numerous professional awards for their efforts and achievements in entrepreneurship, recycling, and environmental practices. (See Mr. Conigliaro's Resume and Accomplishments attached as Exhibit A).

From approximately 1999 to 2012, Mr. Conigliaro was a 10% owner of, and employed by Medical Sales Management Inc., which provided various services to Ameridose and NECC, such as sales support, human resources services, banking, accounting, as well as other office services. Mr. Conigliaro managed personnel interviews, signed vendor checks, and handled issues associated with insurance.

From approximately 2006 through 2012, Mr. Conigliaro was a 10% owner of, and employed by, Ameridose, LLC, which was founded to provide sterile admixing services to hospitals nationwide. Originally, Ameridose was located in Framingham

Massachusetts, but soon thereafter moved to Westborough Massachusetts.

From approximately 2007 through the present, Mr. Conigliaro has been the President and owner of Nationwide Foam Recycling, Inc., a recycling facility, and President and owner of Conigliaro Block, Inc., a construction and manufacturing business. Both of these businesses are located at 701 Waverly Street in Framingham, Massachusetts. Nationwide Foam recycles and repurposes roofing foam and membranes for businesses nationwide, and Conigliaro Block performs construction and utility excavation work and manufactures retaining walls made out of concrete created from recycled materials.

C. Military Service and Accomplishments

Mr. Conigliaro volunteered for the United States Air Force for twenty 20 years. During that time, Mr. Conigliaro received numerous Certificates of Special Recognition, Achievement Medals, Meritorious Service Medals and other awards (See Mr. Conigliaro's Resume and Accomplishments attached as Exhibit A, and Mr. Conigliaro's Meritorious Medals attached as Exhibit B). The Meritorious Service Award, which was awarded to Mr. Conigliaro in 2007 for his distinguished performance as the first United States Homeland Defense Officer, for the Massachusetts Air National Guard was accompanied by an Executive Order stating that:

> Mr. Conigliaro *"used his exceptional leadership skills to define the newly created and highly important homeland defense position. He quickly became a trusted source of information to the Army Strategic Planners, helping them understand the full range of Air Force capabilities. He managed a complete reorganization of the Joint Operations Center, streamlining command and control, reorganizing key staff, and developing comprehensive standard operating procedures."*

The Order also stated that:

> *Mr. Conigliaro' s visionary leadership and dedication to duty was put to the test, when he expertly directed the Battle Staff during two real world events highlighting the vast improvement in our operation. The singularly distinctive accomplishments of Colonel Conigliaro culminate a long and distinguished career in the service of his country and reflects great credit upon himself, the Air National Guard and the United States Air Force".*

Additionally, in 2006, Mr. Conigliaro was granted TOP-SECRET_SCI clearance, which is the highest level of security clearance one can attain, sometimes referred to as "Top, Top Secret" (See Exhibit B).[2]

D. Further Evidence of Mr. Conigliaro's Exceptional Moral Character

Attached as Exhibit C are eight (8) letters attesting to Mr. Conigliaro's moral character. The authors of those letter have known Mr. Conigliaro for approximately 14-20 years. Those letters include the following statements:

*My experience with Greg has been that he is uniformly a true gentleman, a collegial neighbor, and is well-liked in our community. He is a person on whom I would not hesitate to rely on matters effecting the neighborhood.* (Letter from Paul F. Ware, Esq.)

*****************************************************************

*What draws me to Greg is his unwavering morals, compassion to help, deep Catholic beliefs, and amazing connection to his wife, daughter and son.*

*I'm a better person, friend, businessman and family man, because of my friendship with Greg. His moral compass is unwavering. The world would be a better place if people had half of Greg's core values.* (Letter from Kevin G. Cassidy)

*********************************************************************

*Greg undoubtedly has amongst anyone I know, the utmost regard for honor, ethics and family values. His commitment to his community, church, friends, and employees, I'm sure, has positively touched thousands of lives. I have seen Greg invest time, money, and expertise*

---

[2] At trial, counsel attempted to introduce this document. At that time the court ruled Mr. Conigliaro's security clearance was not relevant. Mr. Conigliaro requests that this court consider his top secret clearance at this stage, as further evidence of Mr. Conigliaro's character.

*firsthand in order to help others around him grow both personally and professionally at all levels.* (Letter from Anthony P. Tivnan)

*************************************************************************
*In my interactions with Greg, he has always demonstrated the highest ethical standards as a business owner, military leader, church leader, husband, and father. Greg's passion for sustainability and the environment has enabled his business to grow significantly over the last 30 years as he and his team have taken on recycling challenges that make our world a better place.*

*Greg has been involved in many charitable and public service endeavors including becoming a leader in his church. He has been very generous to the church and also to educational institutions that he supports*. (Letter from David A. Reske)

*************************************************************************
*Being around Greg for over two decades, I have witnessed his compassion for others on many occasions. On one such occasion, he helped me work through business challenges I was facing during the recession of 2008-2009 by offering advice and being there for me when I needed to talk things through.*

*Greg is - above all - a family man. Our children are around the same age and we have spent significant quality family time all together. He is someone I can trust to be a positive role model around my children and to exemplify what a true gentleman should be for both my son and my daughter. Greg is always there with a hand shake for my son and a fatherly hug for my daughter.* (Letter from James Kaloutas)

*************************************************************************
*Greg has always been driven to make a difference. He recognized the country's need for recycling capacity long before it was the hot button issue it is now. Through this work, he provides jobs and opportunities for others.*

*Greg spent many years and countless hours supporting our country in the Air Force. After retirement, his commitments shifted and he has spent much time (along with talent and treasure) giving back to his community and his local Catholic parish supporting projects that benefit from his engineering and construction experience. (*Letter from Daniel A. Lagan)

*************************************************************************
*Mr. Conigliaro is a very honest person who always goes above and beyond for others. My experience witnessing how Mr. Conigliaro conducts himself with others is that of a true gentleman. He deeply cares about Family and Friends. While in a business group with Mr. Conigliaro I was able to witness how generous he was towards others in the group.* (Letter from Jack Doherty)

*************************************************************************
*On multiple occasions, I have witnessed Greg put his own needs behind those of his family, friends and colleagues.*

*Greg volunteers time to his church regularly. He meets monthly with members of his faith, the military and other entrepreneurs.* (Letter from Andrew J. Sohn)
*******************************************************************************

The letters attesting to Mr. Conigliaro's high level moral character, and his extraordinary military service show that other than the offense for which he was convicted, Mr. Conigliaro has led truly an exemplary life.

## IV. ARGUMENT

**THIS COURT SHOULD SENTENCE MR. CONIGLIARO TO A SENTENCE THAT DOES NOT INCLUDE INCARCERATION BY APPLYING THE FACTORS ENUMERATED IN 18 U.S.C § 3553(A), OR BY SENTENCING MR. CONIGLIARO TO A SENTENCE OUTSIDE THE SENTENCING GUIDELINES BY APPLYING A DOWNWARD DEPARTURE, OR A VARIANCE**

### A. Applicable 18 U .S.C.§ 3553(a) Factors[3]

Mr. Conigliaro submits that the Court should apply the following 18 U.S.C. §3553(a) factors in the following manner:

**(1) The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant;**

This factor weighs heavily in favor of Defendant's Requested Sentence. With respect to the nature and circumstances of the offense, it is appropriate for the Court to consider numerous facts that the government completely ignores:

- The 2002 United States Supreme Court's decision in Thompson v. Western States 535 US 357 (2002) invalidated section 503A of the Food and Drug Administration Modernization Act of 1997, creating a regulatory lacuna, where no bright line between a compounding pharmacy and manufacturer existed during the Indictment period;

[3] Several 3553(a) factors are clearly inapplicable to this case and therefore Mr. Conigliaro will only address potentially relevant factors.

- Former FDA agent Samia Nasr confirmed that in the fourteen years she worked for FDA (2004-2018) there was no legally binding law defining what a compounder was and what a manufacturer was. (*Testimony of Samia Nasr*, Day 25, pp. 4, 74-75). And, because of the uncertainty of the law in this area, in 2009, all inspections of compounding pharmacies were put on hold by the FDA. This moratorium remained in place at the time of the outbreak. (*Id.* at p. 95);

- The FDA delayed responding to NECC from 2002-2006;

- Anticipatory Compounding, In-Office-Use, and Shared Services were legally permissible in numerous states (Defendant Trial Exhibit 1773);

- NECC entered into approximately 140 Compounding Agreements with various hospitals throughout the nation, explicitly stating that the hospitals and pain centers would retain the specific patient names associated with the prescriptions/orders; (Defendant Trial Exhibits 1700-02)

- Internal FDA memoranda establishing that the FDA itself doubted their own legal authority to distinguish between a compounding pharmacy and a drug manufacturer, including the FDA's doubt as to their authority to inspect; (Defendant Trial Exhibit 1743 and 1744)

- Mr. Conigliaro did not have an office at NECC, had no day to day knowledge, or interactions or responsibilities with pharmacy operations; nor did he have any knowledge of anyone at NECC ever accepting an obviously fake patient name on a prescription order form;

- In 2011, the Massachusetts Board of Pharmacy inspected NECC because NECC had requested permission to expand and during that inspection the inspector observed: a "fairly large" warehouse; NECC shipped approximately "100 orders per day"; NECC's prescription labels were "compliant with the nature of their practice"; that NECC served "multiple states"; and that NECC was "licensed in 48 states." (Trial Testimony of Bill Frisch); and

- At the outset of the outbreak, Mr. Conigliaro voluntarily assisted in the recall, telling Annett Robinson to tell the regulators the truth, while other defendants (i.e. the pharmacists) fled the business. Mr. Conigliaro continued to manage the recall for approximately one year. In addition, Mr. Conigliaro was the only person to assist NECC's Trustee (appointed by the Bankruptcy court) wind down NECC's corporate affairs, a process that lasted approximately five years.

The Court's discretion in determining a defendant's sentence is very broad: once the Guideline Sentencing Range ("GSR") is properly calculated, "sentencing becomes a judgment call" for the Court, and the court may construct a sentence varying from the GSR "based on a complex of factors whose interplay and precise weight cannot even be precisely described" and that the Court is permitted to consider in constructing a fair sentence, as contemplated in *United States v. Innarelli*, 524 F.3d 286, 292 (1st Cir. 2008) (quoting *United States v. Martin*, 520 F.3d 87, 92 (1st Cir. 2008).

Mr. Conigliaro submits that the facts cited above constitute the "complex of factors" articulated in *Martin* and *Innarelli* and thus the nature of the offense supports Defendant's Requested Sentence. The information set forth in Section III above shows that the History and Characteristics of the Defendant also weighs heavily in favor of granting the Defendant's Requested Sentence.

**(2) The Need for the Sentence Imposed;**

**a) To Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense;**

Mr. Conigliaro requests that the Court take judicial notice of the severity of the restrictions that result from being convicted of impeding the governmental functions of the FDA. In addition, for nearly six years, to comply with his probation obligations Mr. Conigliaro has been required to obtain permission every time he travels outside the Commonwealth of Massachusetts. Including the times that Mr. Conigliaro was required to travel for business, traveled out of state to visit close relatives during holidays, and transported his minor children to their out of state team sports and Boy Scout events, Mr. Conigliaro contacted the Probation department and received permission to travel over fifty

times. In addition, for nearly six years Mr. Conigliaro has been subject to random home visits from the Probation Department. At all times, he has complied with his pre-trial and post-trial probationary requirements. Mr. Conigliaro submits that having been under the supervision of the Probation department for nearly six years, a sentence of Probation more than adequately reflects the seriousness of the offense and promotes respect for the law. Simply put, Defendants' Requested Statement is a just punishment for this offense.

**b) To Afford Adequate Deterrence of Criminal Conduct of Mr. Conigliaro and Others;**

This factor weighs in favor of Defendant's Requested Sentence. With respect to the deterrent effect on others, almost never does the government charge someone with conspiring to impede governmental functions, without also charging the defendant with some other substantive offense. In fact, Mr. Conigliaro has not found a single case where that occurred. For example, it is highly unlikely that any person who is committing tax fraud by not paying income taxes, and also attempting to conceal the tax fraud by taking steps to impede the functions of the Internal Revenue Service, will ever decide not to act that way, because Mr. Conigliaro received Defendant's Requested Sentence. Similarly, if a person was considering taking steps to deceive the FDA, they are not going to change course because Mr. Conigliaro was sentenced to a non-incarceration sentence. This is especially so when that hypothetical conspirator factors in the underlying facts of Mr. Conigliaro's conviction and his unique, two-decade, decorated military service. Therefore, there is no risk that Defendant's Requested Sentence would diminish the usual level of deterrence that exists in entering into a conspiracy to impede governmental functions.

With respect to the issue of the Court's sentence deterring future conduct by Mr. Conigliaro, since the Fall of 2012, when Mr. Conigliaro first learned that the manner in which Defendants Cadden and Chin were operating NECC's the clean room (and the catastrophic suffering that resulted), he has been living with emotional trauma. Through the government's investigation, Indictment, pre-trial phase, trial, post-trial motions and the appellate process, not a day has passed where Mr. Conigliaro has not felt horribly sad and anxious. This heavy load of stress has lasted for ten years. At times, Mr. Conigliaro has described this as feeling that he was living with a chronic disease. Thus, there is zero chance of Mr. Conigliaro re-offending and therefore the deterrence factor set forth in § 3553(a) is not applicable to this case.

**c) To Protect the Public From Further Crimes of the Defendant;**

For the reasons set forth above in section III (D) (entitled "Further Evidence of Mr. Conigliaro's Exceptional Moral Character") this factor weighs in favor of Defendant's Requested Sentence, as there is zero chance that Mr. Conigliaro will commit another offense. The public does not need to be protected from Mr. Conigliaro, and thus Defendant's Requested Sentence is appropriate.

**(3) Any Pertinent Policy Statement Issued by the Sentencing Commission;**

The United States Sentencing Commission Guidelines Section §5H1.11 – entitled "Military, Civic, Charitable, or Public Service; Employment-Related Contributions; Record of Prior Good Works (Policy Statement)" states that:

> *Military service may be relevant in determining whether a departure is warranted, if the military service, individually or in combination with other offender characteristics, is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines*. U.S. Sentencing Guidelines §5H1.11 (2021)

Mr. Conigliaro submits that the details of his decorated twenty year voluntary military career (set forth above in section III C and set forth in both Exhibits A and B) is the type of military service that is of "an unusual degree" distinguishing this case from the typical case covered by the guidelines. For example, his 2007 Meritorious Service Award, for his distinguished performance as the first United States Homeland Defense Officer, for the Massachusetts Air National Guard, which was awarded to Mr. Conigliaro during the Indictment period alleged by the government memorialized Mr. Conigliaro's "exceptional leadership skills to define the newly created and highly important homeland defense position" quickly becoming a "trusted source of information to the Army Strategic Planners…" In addition, the Order also stated that "Mr. Conigliaro' s visionary leadership and dedication to duty was put to the test, when he expertly directed the Battle Staff during two real world events highlighting the vast improvement in our operation. The singularly distinctive accomplishments of Colonel Conigliaro culminate a long and distinguished career in the service of his country and reflects great credit upon himself, the Air National Guard and the United States Air Force".[4]

**(4) The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records who Have Been Found Guilty of Similar Conduct;**

In this case, five defendants were charged with conspiring to impede the governmental functions of the FDA (the "Count 3 Defendants"). Defendant Cadden and Defendant Stepanets were acquitted of that charge in his separate trial. Defendant Ronzio pled guilty, and cooperated with the government. Defendant Carter was convicted, and is scheduled to be sentenced after Mr. Conigliaro. Therefore, comparing Count 3 Defendants' sentences may not be particularly relevant. In addition, because it is so rare for a defendant to be charged *only* with violating the

[4] The 2007 medal is just an example of Mr. Conigliaro's highly unusual military service. Mr. Conigliaro requests that the Court review the full list of his military accomplishments and honors contained in Exhibits A and B.

defraud clause of § 371, Mr. Conigliaro has been unable to find any other case where a defendant was sentenced for a single count of violating the Defraud clause of § 371. (Said another way, all of the cases Mr. Conigliaro could locate were cases where a defendant was sentenced to a *Klein* conspiracy and another substantive charge). Therefore, Mr. Conigliaro requests the Court consider other defendants in this case, convicted of other offenses, whose GSRs were close to Mr. Conigliaro's. The two NECC related defendants whose GSRs are closest to that of Mr. Conigliaro are Douglas Conigliaro and Christopher Leary.

For ease of reference, the Court may find this chart helpful:

| **Defendant** | **Conviction** | **GSR Level** | **Sentence** | **Time Spent on Probation Prior to Sentencing** |
|---|---|---|---|---|
| Christopher Leary | 3 counts of mail fraud; 1 count of introduction of adulterated drugs into interstate commerce with intent to defraud or mislead; 2 counts of introduction of misbranded drugs into interstate commerce | 25 | 2 years probation; 8 months home confinement $450 assessment | 5 1/2 years |
| Gregory Conigliaro | One count of Conspiracy to impede governmental functions | 15 | | 5.7 years |
| Douglas Conigliaro | One count of structuring Plead guilty | 13 | 2 years probation | >2 years |

Mr. Conigliaro submits that when his conviction is viewed alongside of the two sentences above, this Court should sentence Mr. Conigliaro to a term of probation, without a home confinement component.

**B. Applicable Variances**

After consideration of all relevant departure provisions, a sentencing court may also decide that a particular case warrants a "variance" outside the sentencing range provided for by mere application of the Sentencing Guidelines. Courts have held that variances are not subject to the same analysis used for departures. In fact, in some situations, a prohibited ground for departure may be a valid basis for a variance. (See, e.g., United States v. Chase, 560 F.3d 828 (8th Cir. 2009) (departure precedents do not bind district courts with respect to variance decisions, but may be considered "persuasive authority "). A court also may grant a departure and a variance in the same sentence (e.g., a departure for substantial assistance and a variance for the defendant's history and characteristics).

1. Collateral Consequences

If Mr. Conigliaro were to be incarcerated, there would be serious collateral consequences to him, to his family and to his employees. As previously noted, the companies Mr. Conigliaro runs employ approximately 25 people, many of whom have families. While Mr. Conigliaro has assistant mangers that perform certain important duties, he is the only individual who manages the company’s finances and its day-to-day operations. Similarly, Mr. Conigliaro manages, payroll, legal issues, projects occurring out in the field, and other necessary functions of the business. As such, the businesses he owns and operates cannot and will not survive if he is incarcerated.

In addition, the collateral consequences to his family would be severe if he were incarcerated. His daughter is scheduled to graduate from high school in the spring and it would be devastating to the entire family if Mr. Conigliaro were not present. He spends many hours with his son, driving him to sporting events and Boy Scout activities, as well as helping him

achieve academic success, through his support and mentoring. In addition, Mr. Conigliaro is extremely close to his octogenarian parents and provides support to them every chance he can, which is often, including on a daily basis caring for his 89 year old father who is legally blind..

These circumstances support a downward variance. *See, e.g., United States v. Stewart*, 590 F.3d 93, 141 (2d Cir. 2009) ("It is difficult to see how a court can properly calibrate a 'just punishment' if it does not consider the collateral effects of a particular sentence."); *United States v. Pauley*, 511 F.3d 468, 474 (4th Cir. 2007) (sentencing court properly considered fact defendant's loss of "his teaching certificate and his state pension" as reasons justifying a variance); *United States v. Stewart*, 590 F.3d 93, 141 (2d Cir. 2009) (destruction of a defendant's career and livelihood is "substantial punishment" that lessens the need for further punishment); *United States v. Gaind*, 829 F. Supp. 669, 671 (S.D.N.Y. 1993) (loss of defendant's business, assets, and income "constitutes a source of both individual and general deterrence"). The First Circuit has long recognized that "job loss to innocent employees resulting from incarceration of a defendant" is a valid and necessary consideration at sentencing. *United States v. Olbres*, 99 F.3d 28, 36 (1st Cir. 1996); *United States v. Milikowsky,* 65 F.3d 4, 9 (2d Cir.1995) (affirming a downward departure that was granted on the basis of economic impact on the defendant's business, stating, "departure may be warranted where, as here, imprisonment would impose extraordinary hardship on employees."); *see also United States v. Patel,* 164 F.3d 620, 1998 WL 650589, at *4 (2nd Cir. Aug.21, 1998) (affirming the district court's grant of a downward departure based upon a combination of family considerations and business impact); *United States v. Holz*, 118 F. App'x 928, 941 (6th Cir. 2004) ("the likely impact of Defendant's incarceration on his family, and its likely impact on his business, including "a handful of employees [who] would lose work if Defendant were incarcerated" warranted a downward departure. In short, if incarcerated, the harm to Mr.

Conigliaro, his family, and his employees is very real and is therefore the Court should depart or vary from the Sentencing Guidelines in a downward fashion.

2. Military Service

In this case, as already discussed above in section IV A. (3) (entitled "Pertinent Policy Statement Issued by the Sentencing Commission") the United States Sentencing Commission has explicitly recognized that the Court may consider a defendant's military service in fashioning a sentence outside of the Sentencing Guidelines. Mr. Conigliaro maintains that the Court should do just that. In addition, in this case, because there is no need to subject Mr. Conigliaro to incarceration to specifically deter him, the Court should also use that fact as a way to vary outside the guidelines.

3. First Offense and No Likelihood of Re-Offending

When the offense of conviction is an extreme departure from an otherwise well-led life and there is no likelihood of re-offense, a variance and a non-incarceratory sentence may be warranted. *United States v. Howe*, 543 F.3d 128 (3rd Cir. 2008) (affirming probationary sentence for wire fraud despite an 18 - 24-month guideline range, where the appellate court construed the district court to have termed the offense an "isolated mistake" in the context of Defendant's otherwise long and upstanding life). The Court should also use the fact that Mr. Conigliaro is a first-time, non-violent offender as a way to vary from the guidelines. The Sentencing Guidelines, recognizing this fact, now direct courts to "consider imposing a sentence other than a sentence of imprisonment" for certain first-time offenders. U.S.S.G § 5C1.1. Application Note 4.[5] Mr. Conigliaro submits that such a variance is warranted here.

[5] Application Note 4 directly applies when the applicable guideline range is in Zone A or B of the Sentencing Table, *i.e.,* to Guideline Offense levels between 1 and 11 with a Criminal History Category I. Mr. Conigliaro's guideline range, is marginally higher at 15.

### C. <u>Departures</u>

As this Court is aware, "departures" are authorized adjustments to a sentencing range set forth in the Sentencing Guidelines themselves. As Congress acknowledged in the Sentencing Reform Act, and as the Guidelines Manual explicitly states, "it is difficult to prescribe a single set of guidelines that encompasses the broad range of human conduct potentially relevant to a sentencing decision." (See United States Sentencing Commission, <u>Guidelines Manual</u>, §5K2.0, background comment 2021). Therefore, departures perform an "integral function in the sentencing guideline system." (See USSG §5K2.0, background comment) The departure provisions seek to provide courts with a way to impose an appropriate sentence that is properly tailored to the circumstances of the defendant and the underlying crime. They also maintain the statutorily mandated "flexibility to permit individualized sentences when warranted by mitigating or aggravating factors not taken into account in the establishment of general sentencing practices." Id.

Thus, in addition to the applicable variances discussed above, in general, the Court may depart from the applicable range if the Court finds, pursuant to 18 U.S.C. § 3553 (b)(1) that a "mitigating circumstance exists (See Policy Statement §5K2.0 entitled "Grounds for Departure"). Moreover, a departure "may be warranted in the exceptional case in which there is present a circumstance that the Commission has not identified in the guidelines but that nevertheless is relevant to determining the appropriate sentence." (Id.) This is so because while the advisory Guidelines attempt to define the "heartland, i.e. typical cases embodying the conduct described by the advisory Guidelines, when a court finds an atypical case, i.e. one to which a particular guideline linguistically applies, but where conduct significantly differs from the norm, the court may find that a departure is warranted. (See U.S.

Sentencing Commission, Guidelines Manual, Ch. 1 Pt. A (2021).

Mr. Conigliaro submits that for the same reasons articulated above, this court should depart from the stated guideline level in this case.

## V. CONCLUSION

For all of the foregoing reasons, Mr. Conigliaro requests that the Court impose a non-incarceration sentence, without a home detention component, and an appropriate financial penalty.

GREGORY A. CONIGLIARO,
By his attorneys,

/s/ Dan Rabinovitz
Dan Rabinovitz (BBO #558419)
Murphy & King, PC
28 State Street, 31st Floor
Boston, Massachusetts 02109
(617) 423-0400
drabinovitz@murphyking.com

Date: November 28, 2022

**CERTIFICATE OF SERVICE**

I, Dan Rabinovitz, hereby certify that on November 28, 2022, I caused a copy of the foregoing to be e-filed and served pursuant to the Court's CM/ECF system upon all such parties entitled to notice thereunder.

/s/ Dan Rabinovitz
Dan Rabinovitz